All right, our next case for today, case number seven, is United States v. Thompkins, 19-3364, and we should have Ms. Penebod and Ms. Jackson. So we will begin with Ms. Penebod. Good morning. May it please the Court, Amanda Penebod on behalf of Defendant Appellant Michael Thompkins. In Rodriguez v. The United States, the Supreme Court held that law enforcement officers cannot extend a traffic stop beyond the time reasonably necessary to complete the mission of issuing a ticket, absent reasonable suspicion. And here, the District Court incorrectly applied the Rodriguez holding, because it assumed that all safety precautions are taken in furtherance of the traffic mission of the stop. But the Rodriguez opinion requires the Court to evaluate whether a safety precaution is taken in furtherance of the traffic stop or in furtherance of a separate investigation into ordinary criminal wrongdoing. So Ms. Penebod, can I just nail one point down right at the outset? Even Rodriguez, as I recall, I can't find the quote offhand, but even Rodriguez acknowledges that part of a stop includes taking measures for officer safety. I know they mention that there. So why isn't it the case that in this rather brief encounter, that's all that the officers were doing, and there was no prolongation beyond the purpose of the traffic stop itself? There are other cases, MIMS if I'm remembering, you know, where you can ask somebody to get out of a car. Why did this go so far beyond the boundaries? Your Honor, I think it's because the Rodriguez opinion tells us that even safety precautions taken in furtherance of a detour offend the Fourth Amendment. And we know that because in Rodriguez itself, the officer did a traffic stop, he issued the ticket, and then he engaged in a safety precaution, which is he went back to the car and he waited. Even though he had a drug sniffing dog in his own car, he waited and called for backup and waited until that officer came before conducting the sniff. And it was that whole long wait. Judge Scudder, let me ask you this question. When in your view, and be as precise and specific as you can, when in your view did the detour begin? Your Honor, I think the detour begins with the unrelated questioning regarding Mr. Tompkins's criminal history. But I think if the court is not inclined to choose that as the Rodriguez moment, I think it's also certainly appropriate. The moment that Officer Farias asks Mr. Tompkins to exit the vehicle in order to search the vehicle, I think it's very clear from the officer's testimony, it's the officer's statements on video, that his intention was to have Mr. Tompkins exit the car in order to search it. And the district court didn't dispute that. It affirmed that Officer Farias's objective was to have Mr. Tompkins exit the car in order to search it. And that's the problem here. The search itself, of course, is investigation of a separate ordinary criminal wrongdoing. And that exit order is taken in furtherance of that objective of that other investigation. Can you go back to your starting point? Because I want to ask you a question about that. I mean, what concerns me about that is, if you're focusing on the moment that Officer Farias returned to the driver's window after running the license check and the criminal history check, if the detour began at that precise moment, it had to be, did it not, because the statement that the officer made was about Mr. Tompkins' criminal record as opposed to some statement that was more pertinent to the traffic stop? Is that what you rely upon as indicative of the detour? I think the question is whether the action was taken in furtherance of a traffic mission. And so, the traffic stop here was related to failure to use a turn signal and obstruction of view. And inquiries into the criminal history and an exit order have nothing to do with traffic safety, have nothing to do with the ensuring that people... We know, though, from the Supreme Court's decision in cases like Arizona v. Johnson from 2009, do we not, that officers have some amount of flexibility in questions they can ask during a traffic stop? So, the point that I'm trying to get at is, it seems difficult for your position to say that the Fourth Amendment would preclude a question about his criminal record at the moment he returned to the driver's side window. So I think where we get that from, in the Rodriguez opinion, is the point where the of Justice Alito's dissent. Because in footnote two, Justice Alito says, this majority opinion does nothing to curtail unrelated checks and MIMS orders. But the majority specifically says no, contrary to what Justice Alito says in footnote two. Those types of unrelated checks cannot be conducted unless there's reasonable suspicion. And that makes sense because MIMS itself tells us that this is a balancing. We're balancing the reasonableness of asking for steps to be taken in furtherance of officer safety against an individual's rights, Fourth Amendment rights. And that balance weighs in favor when the safety precaution is taken during a traffic stop. It's de minimis. Just to add to that, what portion of the detour is Mr. Tompkins responsible as a result of his declining the officer's request to get out of the car? Your Honor, I think that Mr. Tompkins' refusal is less of the exact time, I think, is not necessarily relevant. And that's because Rodriguez repudiates the de minimis standard explicitly. The lower court had said, well, only a couple minutes, it's not a big deal. But that's what Rodriguez specifically overturned, that we're not looking to a time period. And I think what we have to look at is, what was the officer's purpose? What kind of investigation was he engaged in? Was he engaged? Can I say, that's something that I find interesting in this case. Because we have testimony and a finding, actually, by the district court that Farias wasn't finished with the traffic part of this stop. And we're not talking about 35 minutes or something. We're talking about a relatively brief period of time. And the district court relies on his testimony at the suppression hearing, among other things. And so my question for you is, is this a subjective inquiry embedded in the midst of this objective question about probable cause and reasonable suspicion and all the rest of it? Because Farias definitely says, I wasn't done yet. I hadn't made up my mind. I was trying to reassure him. I'd like to consult with my statements that the district court judge chose to credit and found admissible, found credible. So I don't see where we can second guess that. And if we believe that he wasn't done with the traffic citation, then he can still, under MIMS, ask the guy to get out of the car. Then it's the game's over as soon as that happens, because there's the gun. I think there's two points to make in response. First is that the court, you indicate that the court credited the officer's second statement that he could have changed his mind or that the second officer supported him. But the court didn't know either of those statements. It relied only on his initial statement that he hadn't made up his mind. And I think that was error to fail to consider the record by a whole. And second, the Rodriguez opinion Is it clear error or okay for us to second guess this? It seems like a credibility finding to me. I think that based on the record, the court can find that it was error. But I'd also submit that Rodriguez tells us that it's not the question of whether or not a citation was issued, but whether the officer was engaged in a detour. And by moving to the objective of searching the car, the officer engaged in a detour. And it's not the question of, you know, had he completed all of the checklist stops by handing over the ticket, because that's what Justice Alito points out in his dissent. A cop who's interested in manipulating the system could just not hand over the ticket and thereby avoid the Rodriguez analysis. But that's not what Rodriguez tells us to do. Tells us to look at whether or not the stop is prolonged by a separate investigation. And that is, you might want to wrap up now so that we can, I'll reserve the rest of my time. Brief though it is. Okay. Thank you so much. Ms. Jackson. May it please the court. My name is Shawn Jackson. I represent the United States. This court should affirm the denial of defendants motion to suppress because the district court did not air in concluding that the original mission of the traffic stop had not been prolonged. Now, Ms. Jackson, is that a subjective inquiry? Does that depend on the police talking about what they meant to do and how they intended to do it? Your Honor, I don't believe it's a subjective inquiry. I believe that it is objective based and here under Rodriguez and this court's precedent since Rodriguez, the court tells us to look at not whether or not an action was taken before or after a traffic ticket or warning was issued. But instead, whether or not it would have been reasonable for the traffic mission to have been complete. The government's position that here, regardless of Officer Farias, his subjective intent, which he testified to, that the traffic mission here was not complete at the time, either at the time he asked the defendant about his criminal history record, approximately five minutes and 40 seconds into the stop, or at the time he issued the order for Mr. Farias to, excuse me, Mr. Tompkins to exit the vehicle. So what objectively remains to be done for the traffic mission, which I understand is based on not signaling when he pulls over into the parking place and is also based on another like little tiny thing. Oh, the obstructed windshield. That was all done and he's checked the right registration, he's checked the license, he's made sure there are no outstanding warrants, he's gone through the usual moves. Your Honor, what could have been, we don't know what else could have taken place because the traffic stop went a different direction, obviously, after Mr. Tompkins refused to exit the vehicle. But what happens in other stops is that the officers decide whether or not they're going to issue a ticket for any of the violations that the individual, the driver, stopped for, or whether they were just going to issue an oral warning about whether or not he should fix the obstructed view or use his turn signal. We don't have that record before the court, though, because of what occurred after Officer Farias. I don't know about that. I don't know about that. Here, on page 90 of the appendix in the testimony, there is a record, and I have a related question picking up on where Judge Wood was going or what she was asking about. And the record that you have before you, Ms. Jackson, or we have before us here, is there were questions about what was going on when he returned to the driver's side window. And Officer Farias says, well, the investigation wasn't over because I still have to talk to my partner about it, talk to the partner about the ticket. Okay? So what I actually think is going on here gets right at the rub of the objective versus subjective question. Because it does seem to me, in fairness to the point that Ms. Penobot is making, that Officer Farias was going to fish a little bit when he returned to the driver's side window. In other words, you know, because why else ask about the criminal history? All he had to do was say, I need you to step out of the car for a few minutes. I need to talk to my colleague, but I need you to get out of the car. That's not what happened. He asked him a question about his rap sheet. And so that's a bit of fishing. Now, it may be fishing that's allowed under Johnson, and it may be fishing that is objectively reasonable here because there's no prolongment. So that's what I'd like you to react to. You do have a record that the investigation was going to issue a ticket, and he needed to talk to his partner. But that's not what came out of his mouth when he returned to the driver's side window. That's correct, Your Honor. You're due to the portion of the testimony of Officer Farias discussing whether or not he would need to confer or stating that he would need to confer with his partner. I overlooked that in answering the asking the defendant to step out of his vehicle. The inquiry that Officer Farias engaged with was directly related to furthering officer safety while the traffic stop continued at this point and specifically inquiring about... How? The rap sheet is what it is. The criminal history check is what it is. What is that question other than fishing? Now, it may be allowed, but I don't know. What's Mr. Tompkins going to say? Your criminal history check is wrong? Your Honor, from the government's perspective, the question was not fishing. It was directly related to officer safety because it relates not to drug convictions or questions about contraband other than a weapon. Instead, it directly relates to an extensive history, criminal history, involving firearms. The record reflects that that's what Officer Farias was concerned about from the beginning of the stop. He was concerned for his and his partner's safety because of the potential for gun violence during a traffic stop in the 7th District. Tompkins does distinguish the circumstances, correct? He says, oh, those are... Watching the video, he says those are old. Then the officer comes back and says, well, they're not that old. They're a year old. So he's attempting to distinguish the reasoning within the question, correct? I agree, Your Honor. From Officer Farias's perspective, which the court credited after watching the video, that Mr. Tompkins' reaction was not just distinguishing them, but instead trying to be evasive and defensive related to them, specifically stating those are old, he doesn't pay attention to those. As long as he has his license and fine, when in Officer Farias's perspective, as he testified, he had a conviction from just, or excuse me, an arrest just from the year prior, and he had numerous convictions, Officer Farias testified to seeing at least four convictions related to gun offenses. Your Honor, those questions related to officer safety because as Officer Farias testified, he wanted to see his reaction. He wanted to be able to figure out here's someone who, a driver that's in front of him in the neighborhood that has issues with gun violence, where the driver is sitting in a way that he thinks is trying to conceal the lower half of his body. He wants to inquire more about this extensive and recent gun history in order to further the interest of cannot be found to be unreasonable because here it lasted less than 20 seconds and was in furtherance of the mission of the traffic stop to ensure officer safety as the district court found. Your Honor, likewise, the exit order also furthered officer safety interest as this court has, has, excuse me, as the Supreme Court has held, officer safety is furthered by allowing officers to order drivers and occupants of vehicles during traffic stops to exit their vehicles, and that's exactly what Officer Farias did here because he was concerned that the defendant may have a weapon on him, and in fact had just before the exit order learned from his partner that there was a baton, an actual weapon within Officer Farias's, or excuse me, within Mr. Thompkins' reach. If there are no further questions from the court, the government asks that this court affirm the district court's denial of defendant's motion to suppress. All right, I see none, so thank you very much, and we'll give Ms. Penobot a full minute since she had pretty much run down the clock. Thank you, Your Honor. With my remaining time, I'd like to talk about the reasonable suspicion analysis, and specifically I'd like to address the question of the evasive answer, the allegedly evasive answer. I'd note that Officer Farias never asked Mr. Thompkins a question. He merely stated, you've got a lot of UW, so it's hard to see how a response to that can be deemed evasive when no question was posed. Typically when this court rules that there are evasive answers, it's when a direct question is posed and the individual declines to answer. So although Officer Farias may not have agreed that old is a right characterization of Mr. Thompkins' criminal history, it doesn't render it misleading or incorrect. I'd also point out that the presence of the baton, I think, is a red herring. There's no connection between having a baton in the car and possessing contraband. The only thing the government has advanced is the idea that he could hit the officers with the baton, but I think that that kind of reasoning is foreclosed by this court's opinion in Paniagua-Garcia, where there was a cell phone possessed. Just because you possess a cell phone doesn't mean you're texting. Just because you possess a baton doesn't mean that you're about to hit officers. I thank the court, and we'd ask that this court reverse the district court's opinion and remand. All right, thank you very much. Thanks as well to the attorney for the government. The court will take the case under advisement.